Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EMMA CONNOR,<br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC. HEALTH AND WELFARE BENEFIT PLAN,<br>    Defendant. | No. 3:25-cv-01836-SI<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS |

Defendant Meta Platforms, Inc. Health and Welfare Benefit Plan has moved for dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), alleging that Plaintiff lacks standing to bring this lawsuit, and that she has failed to state a claim in her complaint on which relief can be granted. This memorandum will provide Plaintiff's response.

///

///

**FACTS**

The following facts are either alleged explicitly in Plaintiff's complaint, or may be reasonably inferred from it. Plaintiff is an employee of Meta Platforms, Inc., which sponsors a health benefit plan for its employees. That plan, the Meta Platforms, Inc. Health and Welfare Benefit Plan (the "Meta Health Plan"), is the Defendant in this action, as Plaintiff seeks to recover benefits due to her under the Plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

The plan document controlling the Meta Health Plan was filed by the Defendant as Exhibit A to its Motion to Dismiss, D.E. 6-1, and is the same document referenced by the Plaintiff throughout her Complaint.[1] This Plan Document contains a section entitled "Transgender Services," which provides for a broad scope of surgical and non-surgical care when participants meet the criteria stated in the Plan. D.E. 6-1, pp. 44-50. The Plan states that "Covered Expenses… include but are not limited to… reconstructive and complementary procedures for body and face feminization and masculinization." *Id.* at 44. The services Plaintiff is seeking are gender-affirming surgical procedures such as clavicle shortening, scapular spine shaving, and rib remodeling, all of which fall under the general category of body feminization.

---

[1] Defendant has filed two plan documents, in fact. D.E. 6-1 is entitled the "Plan Document and Summary Plan Description" for the health plan only, and contains all terms which are relevant to this motion. D.E. 6-2 is entitled the "Plan Document" for the overarching benefits plan, covering administrative terms for the health plan and other benefits provided to Meta employees. D.E. 6-2 is not relevant to this motion.

In order to qualify for any "reconstructive and complementary procedures" under the terms of the Plan, a participant must show that they have 1) persistent, well-documented gender dysphoria, 2) capacity to make a fully-informed decision and consent to treatment, and 3) if significant medical or mental health concerns are present, they must be reasonably well-controlled. D.E. 6-1 at p. 45. The Plan states that "the need for these services can be documented in the form of a letter [from one's doctor] recommending these services along with a diagnosis of gender dysphoria." *Id.* As alleged in the Complaint, Plaintiff's medical doctor and counselor did submit such supportive letters, explaining that Plaintiff met the criteria stated in the Plan and had a medical need for the services requested. D.E. 1 at p. 3-4, para. 15. Defendant's claims administrator, Meritain Health, denied Plaintiff's request for pre-authorization of these services, stating that the "Procedures are not listed [in the Plan] as covered services."

> The Plan Document defines "Covered Expenses" as follows:
>
> Covered Expenses include charges in connection with Medically Necessary Gender Affirmation Treatment as long as you or a covered Dependent have obtained pre-determination from the Plan. Gender Affirmation Treatment Covered Expenses include but are not limited to: …
>
> (4) Reconstructive and complementary procedures for body and face feminization and masculinization. …
>
> (8) Procedures and services listed in the tables at the end of this Transgender Services section.

D.E. 6-1 at p. 44. A few pages later in the Transgender Services section, the Plan Document lists several tables of specific covered services including a table of Reconstructive and

Complementary Procedures similar to those sought by the Plaintiff, including facial bone reduction, custom mandibular implants, liposuction and lipofilling, and the like. *Id*. at p. 47. The specific procedures sought by the Plaintiff, however, are not included in the tables. As such, Plaintiff is not relying on section (8) of the definition of Covered Services to support her claim for these benefits. Rather, she relies on the general definition of Covered Services, as well as section (4) of said definition. Based on the language stating that Covered Services "**include but are not limited to**" the listed services, the list itself is not exhaustive. Similarly, the fact that "reconstructive and complementary procedures" have their own general category under section (4) of the list also means that the tables of specifically-covered services referenced in section (8) are also not exhaustive.

Plaintiff and her medical providers submitted her pre-authorization request for services to the Plan's claims administrator, and that claim was denied. Plaintiff appealed that denial in a timely manner, as allowed by the ERISA claims regulations. Defendant and its claims administrator failed to make a timely decision on her appeal, so Plaintiff availed herself of ERISA's "deemed exhaustion of administrative remedies" clause to file the instant action.

**Law & Argument**

I. **Plaintiff has standing to bring this lawsuit.**

Contrary to the assertions in Defendant's Motion to Dismiss, Plaintiff is not asserting that the Plan *should* cover the medical services she is requesting. Plaintiff clearly alleges throughout her Complaint that the Plan *does* cover those services, and that the

denial of her pre-authorization claim was contrary to the terms of the Plan. Plaintiff is not seeking an expansion of the coverage available under the Plan, she is merely seeking to enforce her rights to benefits which *are* available under the existing terms of the Plan. As such, she has standing to challenge Defendant's denial of her claim for these services.

To sue under ERISA, a plaintiff must have constitutional standing. *Leuthner v. Blue Cross & Blue Shield of N.E. Pa.*, 454 F.3d 120, 125 (3d Cir. 2006). To show constitutional standing, plaintiffs must meet three elements: injury in fact, a causal connection between the action complained of and the injury, and a likelihood that the injury will be redressed through the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). All three of these elements of constitutional standing are easily met here. In fact, the only element that Defendant challenges is the requirement of an "injury in fact."

Defendant claims that Plan does not actually cover the services she seeks, and that she is therefore not injured by a denial of services to which she is not entitled. Herein lies the fundamental issue of this case - if Defendant is correct, that the Plan does not actually provide any path to coverage for the services Plaintiff seeks, then Plaintiff's case should indeed be dismissed. But the Defendant is not correct. The terms of this benefit plan are not at all limited to the specific lists of services contained therein. As such, Plaintiff has been injured by the denial of services to which she is entitled under the broad terms of the Plan.

Again, while the benefits plan document contains a table of services which are explicitly covered, it also generally states that "reconstructive and complementary

procedures" not necessarily included on that list will also be covered. Furthermore, the general definition of "Covered Services" would encompass Plaintiff's requested services, particularly since the plain language of the Plan Document states that "Covered Services" include "**but are not limited to**" the listed services.

Defendant points out that the Plan also contains links to certain "Aetna Guidelines" which are incorporated by reference into the terms of Plan. Indeed they are, but only for certain sub-categories of Transgender Services; specifically, for "Breast/Chest Surgery" and for "Genital Surgery." Plaintiff's requested services do not fall under either of these categories, so Aetna's guidelines are not relevant to her claim. Furthermore, even if these Aetna guidelines did apply to Plaintiff's claim, the guidelines themselves state that "Some plans may cover gender affirming procedures in addition to the following policy. Please check the specific benefit plan documents." D.E. 6-3 at p.2. In other words, in the event of a conflict between what is covered by the Plan itself and what these Aetna guidelines recommend *should* be covered, the Plan document controls.

The Plan Document here covers many services that the Aetna guidelines themselves would not cover, such as jaw surgery, liposuction, cheek implants, and vocal cord surgery. *Compare* D.E. 6-3 at pp. 6-7 (Aetna guidelines recommending that Plans consider these procedures to be "cosmetic" and not medically necessary) *with* D.E. 6-1 at p. 47 (Meta Plan Document stating that all such procedures are covered under *this* Plan). As Defendant argues, Meta had broad discretion in deciding what to cover and what not to cover in sponsoring this benefits plan, and it is clear that Meta chose to cover a broad

swath of transgender services, going well beyond what Aetna recommended.[2]

The instant lawsuit is the most basic of ERISA claims: A case "by a participant... to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); ERISA § 502(a)(1)(B). Plaintiff has clearly explained, in her complaint and in this brief, how the Plan provides for the services she is seeking. Defendant has denied those services, and that denial was wrong under the terms of the Plan. Plaintiff thus has constitutional, prudential, and statutory standing to bring this suit.

## II. Plaintiff has alleged sufficient facts in her complaint to state a claim under ERISA.

Plaintiff has alleged sufficient facts to survive dismissal at this stage of the case. She has alleged that she is a participant in this ERISA plan and therefore entitled to make a claim thereunder. Complaint, D.E. 1, at paras. 6-8. She has specifically pointed out the terms of the Plan which provide coverage for the services she requests. *Id.* at paras. 12-14. She has explained how she meets the requirements for receiving those services by reference to the letters submitted by her medical doctor and her counselor. *Id.* at para. 15. Finally, she has explained how she presented her claim, attempted to exhaust the Plan's administrative remedies, and ultimately came to deem those remedies exhausted by operation of the ERISA regulations due to the Plan's failure to make a timely appeal

---

[2] As Defendant notes in its brief, Meritain Health, the entity which served as claims administrator here, is a subsidiary of Aetna, Inc., the author of these guidelines. D.E. 5 at p. 8.

decision.³ *Id.* at paras. 16-17, 25-26, 35-36.

Again, Defendant's principal argument appears to be that the terms of the Meta Health Plan do not actually provide for the services Plaintiff seeks, which means she has no path to success in this case. As argued extensively above, this is incorrect. While the Plan does include a table of services which are explicitly covered, that table is clearly not meant to be exhaustive. The list of Covered Expenses specifically says they "include but are not limited to" the listed procedures, thus defeating any argument that the list itself is exhaustive.

In arguing that the list of explicitly covered services stated in the Plan is exhaustive, Defendant is alluding to the legal principle of *expressio unius est exclusio alterius*, under which a list in a statute or contract is read exclusively, and the court limits its construction thereof to the contents of that list. To roughly translate the law latin, "the expression of one thing (or a list of things) is the exclusion of others." However, there are countless court decisions holding that this legal principle is inapplicable when the contract itself contains language negating such exclusivity; for example, language stating that a list "includes *but is not limited to*" the listed items. *See, e.g., In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (citing *Puerto Rico Maritime Shipping Authority v. I.C.C.*, 645 F.2d 1102, 1112 n. 5 (D.C. Cir. 1981) ("hornbook law" that list following the word

---

³ To briefly address Defendant's third argument in its Motion, D.E. 5 at p. 15, Plaintiff is not alleging any separate cause of action for Defendant's failure to follow proper ERISA claims procedures. This failure is relevant to the deemed exhaustion of Plaintiff's ERISA administrative remedies, and to the question of whether Defendant's decision on Plaintiff's claim is later reviewed by the Court *de novo* or for an abuse of discretion.

"including" is "illustrative, not exclusive"); *Gould & Eberhardt*, 69 B.R. at 947 (" 'includes' and 'including' are not limiting language"); *Cash Currency*, 762 F.2d at 552 ("includes" or "including" demonstrates that the drafter "intended to make the list of [terms] illustrative rather than exhaustive"); *Matter of Maidman*, 2 B.R. 569, 575 (Bankr. S.D.N.Y. 1980) ("when the verb 'include' is utilized..., it is generally improper ... to conclude that entities not specifically enumerated in the definition of [the relevant term] are to be excluded"). The Plan here contains such broadening language, and so Defendant's argument for the exclusivity of its list must fail.

It is also a basic principle of contract interpretation to give effect to each part of a contract, avoiding constructions that would render a clause or portion of the document superfluous. "We will not interpret a contract so as to render one of its provisions meaningless." *Turlock Irrigation Dist. v. Federal Energy Regulatory Comm.*, 903 F.3d 862, 872 (9th Cir. 2018). Thus, the fact that "Reconstructive and complementary procedures for body and face feminization" is listed as a category of coverage *separate* from the tables of such procedures further defeats Defendant's argument. In the list of Covered Services, there is a section (4) which provides for coverage of body and face feminization services generally, and a section (8) which provides coverage for "Procedures and services listed in the tables at the end of this Transgender Services section." . D.E. 6-1, p. 44. The fact that section (4) appears separately from section (8) in the same list must mean that section (4) covers something *other* than what is in the tables referenced in section (8). If, as Defendant contends, the tables were the sole source of coverage for transgender services,

there would be no need for section (4) at all. In fact, to adopt Defendant's interpretation would mean that *only* section (8) of this list has any effect, contrary to this rule of contract interpretation.

   Plaintiff is arguing here, and has clearly alleged in her Complaint, that the terms of this benefits Plan are sufficiently broad to cover the services she seeks. As such, she has stated a claim upon which relief may be granted. Whether such relief will actually be granted in the end is a separate question for another day, one which will involve the Court examining the medical proof to determine if Plaintiff has met her burden of proving medical necessity for the requested services. But that is not at issue here and now. Right now, it is sufficient to find that Plaintiff has a viable and justiciable claim.

## **CONCLUSION**

   Plaintiff has alleged in her complaint facts sufficient to show that the Defendant ERISA benefits plan does cover the services she seeks, and that she has taken all steps necessary to present that claim, perfect that claim, and exhaust any administrative remedies related to that claim. Plaintiff has explained how she was harmed by this breach, and how the plan and the law provide for the remedy she seeks. As such, this motion to dismiss should be denied.

                                    Respectfully submitted,

                              BY:   *s/Jeremy L. Bordelon*_____
                                    Jeremy L. Bordelon, OSB No. 160789