**Damon Elder,** OSB No. 085313
damon.elder@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Tel:  +1.206.274.6400

**Scott L. Mullins,** OSB No. 142504
scott@slmullins.com
MULLINS LAW OFFICE LLC
1000 SW Broadway, Suite 2300
Portland, OR 97205
Tel:  +1.971.383.1315

**Dylan Rudolph**, *pro hac vice*
dylan.rudolph@morganlewis.com
**Thomas A. Duda**, *pro hac vice*
thomas.duda@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
Tel:  +1.650.843.4000

*Attorneys for Defendant Meta Platforms, Inc.*
*Health and Welfare Benefit Plan*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## (PORTLAND DIVISION)

| | |
|---|---|
| EMMA CONNOR, <br><br>        Plaintiff, <br>   v. <br><br> **META PLATFORMS, INC. HEALTH AND WELFARE BENEFIT PLAN**, <br><br>        Defendant. | Case No.: 3:25-cv-01836 <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> **Request for Oral Argument** |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT.................................................................................................... 2

      A.     Plaintiff Lacks Article III Standing........................................................ 2

      B.     Federal Rule 12(b)(6) Also Requires Dismissal of Plaintiff's Complaint Because She Has Failed to State a Claim Under ERISA. ..................................... 5

      C.     Plaintiff Admits She Has No Right of Action Based On Alleged Violations of Regulatory Claims Procedures......................................................... 9

III.    CONCLUSION.................................................................................................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,
2024 WL 1319777 (C.D. Cal. Mar. 26, 2024) ..........................................................................7

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) ..............................................................................................1, 2

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..................................................................................................................7

*In re Gould & Eberhardt Gear Machinery Corp*,
69 B.R. 944 (Bankr.D.Mass.1987) ...........................................................................................7

*In re Mark Anthony Const., Inc.*,
886 F.2d 1101 (9th Cir. 1989) ..................................................................................................7

*Maeve v. Centennial Sch. Dist. No. 28J*,
2025 WL 3564217 (D. Or. Dec. 12, 2025) ...............................................................................2

*Matter of Cash Currency Exchange, Inc.*,
762 F.2d 542 (7th Cir. 1985) ....................................................................................................7

*Matter of Maidman*,
2 B.R. 569 (Bankr. S.D.N.Y. 1980).........................................................................................7

*Puerto Rico Maritime Shipping Authority v. I.C.C.*,
645 F.2d 1102 (D.C. Cir. 1981)................................................................................................7

*Smith v. Cigna Health & Life Ins. Co.*,
2020 WL 5834786 (D. Or. Sept. 30, 2020) .....................................................................5, 6, 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................................3

*Thole v. U. S. Bank N.A*,
590 U.S. 538 (2020)...............................................................................................................1, 2

*Trees v. Serv. Emps. Int'l Union Loc. 503*,
574 F. Supp. 3d 856 (D. Or. 2021) ...........................................................................................3

*Unimax Commcn's, LLC v. T-Mobile US, Inc.*,
2025 WL 3090751 (9th Cir. Nov. 5, 2025)...............................................................................1

-iii-

**Page**

STATUTES

29 U.S.C. § 1001, *et seq.*................................................................................... *passim*

29 U.S.C. § 1132(a)(1)(B) ................................................................................2, 5, 6

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) .........................................................5

I.    **INTRODUCTION**[1]

Plaintiff's Opposition ("Opp.") confirms that her lawsuit is based purely on unsupported, conclusory allegations. She said it best: "[I]f Defendant is correct, that the Plan does not actually provide any path to coverage for the services Plaintiff seeks, then Plaintiff's case should indeed be dismissed." Opp. at 5. That is correct. Not only has Plaintiff failed to allege or identify a specific Plan provision to support her claim, as she must, but she obfuscates clear Plan language that shows the requested services are ***not covered under the Plan***, which is confirmed by medical guidelines that Plaintiff admits are incorporated into the Plan by reference. Plaintiff failed to rebut the several reasons why her Complaint should be dismissed with prejudice:

**First**, Plaintiff does not substantively respond to the Plan's challenge that she lacks Article III standing because she failed to allege a ***redressable*** injury and has waived her right to contest that argument. *Unimax Commcn's, LLC v. T-Mobile US, Inc.*, 2025 WL 3090751, at *1 (9th Cir. Nov. 5, 2025) (plaintiff "waived its … argument by failing to substantively address [it] in its opposition to the motion to dismiss"). On that basis, her Complaint should be dismissed.

Plaintiff also failed to rebut that she has not alleged a legal injury. To demonstrate Article III standing, Plaintiff must plausibly allege that she has suffered a particularized and concrete injury. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (a "pleaded injury must be both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'"). Conclusory allegations that Plaintiff was injured by the denial of a request for non-covered services are not sufficient to meet that burden, and "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020). Nor has she met the

---

[1] Undefined capitalized terms have the same meaning as in the Plan's Motion (Dkt. 5).

redressability element because Plaintiff would not have a "penny more" in benefits from this case since she was not entitled to the requested benefits in the first place. *Id.*

**Second**, and similarly, Plaintiff has not stated a claim under Section 502(a)(1)(B) of ERISA. Plaintiff's failure to identify a ***specific*** Plan provision that would entitle her to the benefits she seeks is fatal to her case. Her reliance on general Plan language regarding "reconstructive and complimentary procedures" or the Plan's use of "including but not limited to" in listing certain covered services (that do not include those she requested) is not sufficient and only confirms that her claim lacks support under the Plan.

**Third**, Plaintiff concedes that she has no right of action for an alleged violation of the ERISA claims regulations. Opp. at 8, n. 3. To the extent her claim is based on this theory of liability, it must be dismissed, as she admits.

For these reasons, and those stated in the Motion, Plaintiff's Complaint should be dismissed with prejudice because the flaws in her pleading cannot be cured through amendment.

## II.     ARGUMENT

### A.     Plaintiff Lacks Article III Standing.

Plaintiff has failed to demonstrate Article III standing because she has not plausibly alleged that she suffered a redressable, legal injury. *Dutta*, 895 F.3d at 1173.

To start, Plaintiff argues that the Plan only challenges standing under the "injury in fact" element of Article III. Opp. at 5 ("the only element that Defendant challenges is the requirement of an 'injury in fact'"). That is incorrect. The Plan also challenged Plaintiff's standing because she failed to allege a ***redressable*** injury. Mot. at 5 ("And, because Plaintiff has no right to recover benefits for non-covered services, the outcome of this lawsuit will not benefit Plaintiff at all because she cannot sue to re-write the terms of the Plan"). In failing to respond to that

argument, Plaintiff waived her right to contest it. *Maeve v. Centennial Sch. Dist. No. 28J*, 2025

WL 3564217, at *10 (D. Or. Dec. 12, 2025) ("failing to raise an argument in a … response may

result in waiver") (citing *Unimax*, 2025 WL 3090751, at *1). On this basis, Plaintiff's Complaint

should be dismissed for lack of Article III standing.

Plaintiff's arguments regarding her failure to demonstrate a legal injury fare no better.

Not only has Plaintiff failed to identify a ***specific*** Plan provision that would entitle her to the

requested services, as she must, but she failed to rebut that the Plan identifies the types of

complementary and reconstructive Transgender Services that ***are*** covered, and the three services

that Plaintiff seeks are not included. Mot. at 5-7. Plaintiff could not have been injured based on a

decision to deny a request for benefits to which she is not entitled. *Id.*

In response, Plaintiff argues, without plausible factual allegations in support, that the list

of covered services identified in the Plan is not exhaustive and, she posits, the requested services

must therefore be covered under the Plan too. Opp. at 5. That is factually incorrect and not close

to sufficient to demonstrate legal injury. An "injury is concrete if it is *de facto*; that is ***it must***

***actually exist***." *Trees v. Serv. Emps. Int'l Union Loc. 503*, 574 F. Supp. 3d 856, 861 (D. Or.

2021) (Simon, J.) (dismissing claims for lack of standing based on a failure to allege injury in

fact) (emphasis added); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiff does not

plausibly allege that she has been injured at all, other than arguing that she was denied a request

for non-covered benefits. That is not enough to carry the day.

Notably, while Plaintiff argues that she "has been injured by the denial of services to

which she is entitled under the broad terms of the Plan[,]" she cites no Plan provision to support

that statement. Opp. at 5. Instead, she relies on the "general definition of 'Covered Services'"

under the Plan as the basis for her claim. *Id.* at 6. Again, that is not sufficient. *Trees,* 574 F.

Supp. 3d at 861; *Spokeo*, 578 U.S. at 341. Nor does her reliance on Plan language that says

Covered Services "include 'but are not limited to'" certain services that are specifically

identified. Opp. at 6. That argument is based on pure speculation, particularly in the face of

language to the contrary in both the Plan and the incorporated Aetna Guidelines. Mot. 5-7.

Plaintiff's attempts to undermine the significance of the Aetna Guidelines does not help

her cause either. While Plaintiff admits that those guidelines are incorporated into the Plan by

reference, she argues that they only apply to certain "sub-categories" of Transgender Services,

including "Breast/Chest Surgery" and for "Genital Surgery." Opp. at 6. And that the services *she*

requested do not fall under those categories. *Id.* Not so. Even a cursory review of the Aetna

Guidelines shows that they pertain to services outside "Breast/Chest Surgery" and "Genital

Surgery." Dkt. 6-3 at 2 of 61. For one thing, the guidelines are titled "Gender Affirming

Surgery" and the scope of the policy reads: "This Clinical Policy Bulletin addresses gender

affirming surgery." *Id.*

Moreover, and importantly, the guidelines identify procedures that Aetna considers "Not

Medically Necessary" like hair removal, tracheal shave, and certain facial gender affirming

procedures. *Id.* at 6 of 61. The guidelines also list "Body contouring gender affirming surgery"

under the "Not Medically Necessary" heading. *Id.* And they identify "Experimental,

Investigational, or Unproven" services, which include "Frontal contouring with corrugator

resection for facial feminization surgery." *Id.* at 7 of 61. Plaintiff's requests for "clavicle

shortening, scapular spine shaving, and rib remodeling" are far more consistent with the types of

surgeries that are "***Not*** Medically Necessary" under Aetna's Guidelines than those that are

covered. Compl. ¶¶ 12-13; Dkt. 6-3 at 6 of 61 (emphasis added).

In sum, Plaintiff could not have been injured based on the denial of a pre-determination request for non-covered services, and there is no outcome in this lawsuit that would re-write the Plan to grant her additional benefits she is not owed. Plaintiff cannot cure those fatal flaws through amendment, and her Complaint should be dismissed with prejudice.[2]

**B.      Federal Rule 12(b)(6) Also Requires Dismissal of Plaintiff's Complaint Because She Has Failed to State a Claim Under ERISA.**

Plaintiff's conclusory allegations are also insufficient to state a claim under ERISA because she has not and **cannot** identify any Plan provision that would entitle her to the benefits she seeks. That failure dooms her case from the start. *Smith v. Cigna Health & Life Ins. Co.*, 2020 WL 5834786, at *5 (D. Or. Sept. 30, 2020) ("the lack of any specific reference to plan provisions which affords the benefits to which they contend they are entitled warrants dismissal of [the plaintiffs'] denial-of-benefits ERISA claim"); *see also* Mot. at 8-9 (collecting cases). Further, not only has Plaintiff failed to identify any specific Plan provision that supports her claim, but she also failed to rebut that the Plan document and incorporated Aetna Guidelines demonstrate the opposite—that her requested services are **not** covered. Section II(A), *supra.*

In response, Plaintiff does not refute or even attempt to distinguish any of the Plan's cited authority that requires dismissal of her Complaint. Mot. at 7-9; Opp., *generally.* Instead, Plaintiff simply argues that "She has alleged that she is a participant in this ERISA plan and therefore entitled to make a claim thereunder." Opp. at 7. It is not that easy. In addition to having statutory standing under ERISA (i.e., being a participant in the Plan), Plaintiff must also have Article III

---

[2] Plaintiff's argument that the Plan trumps the Aetna Guidelines is irrelevant because the Plan does not provide any support that Plaintiff's requested services are covered in the first place. Opp. at 6. Neither is Plaintiff's argument that the Plan covers procedures that would not be covered under Aetna's Guidelines because, again, the Plan provides no support that the requested services are covered. *Id.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

standing (which she lacks for the reasons noted above) and ***plausibly allege*** an entitlement to the

Plan benefits that she seeks. *Smith*, 2020 WL 5834786, at \*5; Mot. at 7-9. In failing to plausibly

allege any entitlement to those benefits, Plaintiff failed to state a claim under ERISA §

502(a)(1)(B), and her Complaint must be dismissed on this separate basis. *Id*.

Plaintiff is also incorrect that she has "specifically pointed out the terms of the Plan

which provide coverage for the services requested." Opp. at 7. To support that statement, she

cites Paragraphs 12-14 of her Complaint. *Id*. But those paragraphs present only conclusory and

unsupported allegations that do not identify any specific Plan provision that supports Plaintiff's

claim. For example, Paragraph 12 notes that the Plan document includes a section titled

"Transgender Services" that "provides a broad scope of surgical and non-surgical care…"

Compl., ¶ 12. Nothing in that section provides support for coverage for the specific services

Plaintiff requested. Mot. at 7-9. Paragraph 13, likewise, notes that "Covered Expenses" include

"charges in connection with Medically Necessary Gender Affirmation" that "include but are not

limited to … reconstructive and complementary procedures." *Id.*, ¶ 13. But, again, this general

language is not enough to satisfy Plaintiff's burden at the pleading stage. *Smith*, 2020 WL

5834786, at \*5. Courts would have no control over ERISA benefit claim litigation if claimants

only needed to identify broad, general language to entitle them to relief. And, as noted, Plaintiff

has failed to rebut that the Plan identifies the specific categories of "reconstructive and

complementary procedures" that ***are*** covered, none of which include the types of services that

she requested. Mot. at 8-9. And, lastly, Paragraph 14 simply parrots Plan language related to the

process that participants must complete to submit a pre-determination request under the Plan.

*Id.*¶ 14. While Plaintiff alleges that she met those procedural requirements, the provisions

provide no substantive support that Plaintiff's requested services are covered. *Id.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's argument that the Plan's list of reconstructive and complementary services "is clearly not meant to be exhaustive" is not sufficient either. Section II(A), *supra*. In addition to being unsupported and contrary to the Plan and Aetna Guidelines, this argument does not address Plaintiff's fundamental problem, which is that it is **her burden** to support her claims with specific Plan provisions at this stage of her case. *Smith*, 2020 WL 5834786, at *5. Relying on "included but not limited to" language, without more, is not enough. *Aguilar v. Coast to Coast Comput. Prods., Inc.*, 2024 WL 1319777, at *4 (C.D. Cal. Mar. 26, 2024) ("…Plaintiffs have failed to identify provisions of the plan that entitle them to benefits"). That is because speculation and conjecture are insufficient to state a claim under ERISA; at this stage the Court must "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). Plaintiff's allegations clearly fall into the second category.

Likewise, Plaintiff's discussion of the principle "*expressio unius est exclusion alterius*" and the cases she cites in support are misplaced. Opp. at 8-9. While those cases may address general principles about contract interpretation, **none** of those cases stand for the principle that a plaintiff can state a claim for ERISA benefits without identifying any support under the relevant ERISA plan. *Id. In re Mark Anthony Const., Inc.*, for example, does not involve ERISA claims at all. 886 F.2d 1101, 1106 (9th Cir. 1989). That case addressed a question of statutory interpretation, not ERISA plan interpretation, and it does not help Plaintiff's cause. *Id.* The same is true of the other cases Plaintiff cites: *Puerto Rico Maritime Shipping Authority v. I.C.C.*, 645 F.2d 1102, 1112 n. 5 (D.C. Cir. 1981); *In re Gould & Eberhardt Gear Machinery Corp.*, 69 B.R. 944, 947 (Bankr.D.Mass.1987); *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 552 (7th Cir. 1985); and *Matter of Maidman*, 2 B.R. 569, 575 (Bankr. S.D.N.Y. 1980). Those decisions were merely string-cited in *In re Mark Anthony Const.* as examples of other cases addressing

statutory interpretation issues. *Id.* **None** of those cases involved medical claims, let alone medical claims asserted under an ERISA governed health Plan. *Id.* They are, thus, irrelevant, easily distinguishable, and unhelpful to Plaintiff.

Plaintiff further argues that, because the Plan states that it provides "Reconstructive and complementary procedures for body and face feminization" in one place and then lists categories of Covered Services in a separate section, Plaintiff's requested services must be covered because they somehow fall under the broader language. Opp. at 9-10. This argument is pure speculation and makes no sense. While the list of "Covered Services" separately notes "(4) Reconstructive and complementary procedures for body and face feminization and masculinization" and "(8) Procedures and services listed in the tables at the end of this Transgender Services section," that does not mean item (4) is a broad catchall that would include any type of reconstructive and complementary procedure that Plaintiff may request. *Id.* This argument also ignores that the table in question is titled ***"Reconstructive and Complementary Procedures."*** Dkt. 6-1 at 47 of 99 (emphasis added). Meaning, item (4) obviously refers to the specific types of "reconstructive and complementary" procedures that are covered under the Plan, or else there would be no reason to separately identify them. *Id.* And item (8) simply notes that the Plan covers other types of transgender services outside of the reconstructive and complementary procedures that are identified in the table. *Id.* It does **not** mean that Plaintiff can write in any services she chooses and claim those are covered too. This speculative argument does not save Plaintiff's claim from dismissal, and her Complaint must be dismissed with prejudice for failure to state a claim under ERISA. *Smith*, 2020 WL 5834786, at \*5; *Aguilar*, 2024 WL 1319777, at \*4.

**C.      Plaintiff Admits She Has No Right of Action Based on Alleged Violations of Regulatory Claims Procedures.**

Finally, Plaintiff admits that she "is not alleging any separate cause of action for Defendant's failure to follow proper ERISA claims procedures." Opp. at 8, n. 3. While those allegations are baseless, Plaintiff confirms that she does not assert any substantive violation of ERISA based on those allegations.[3]

**III.      CONCLUSION**

For these reasons, the Court should dismiss the Complaint with prejudice.

Dated: January 20, 2026                              Respectfully submitted,

Scott L. Mullins, OSB No. 142504
MULLINS LAW OFFICE LLC
1000 SW Broadway, Suite 2300
Portland, OR 97205
Tel:  +1.971.383.1315
scott@slmullins.com

*Attorneys for Defendant Meta Platforms, Inc.*
*Health and Welfare Benefit Plan*

---

[3] Plaintiff's discussion regarding ERISA's and the Plan's exhaustion requirements is irrelevant because the Plan does not challenge Plaintiff's failure to exhaust the Plan's administrative remedies in this Motion (Dkt. 5, *generally*), although it reserves its right to do so should any portion of Plaintiff's claim survive the pleading stage.