**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EMMA CONNOR**,

Plaintiff,

v.

**META PLATFORMS, INC. HEALTH AND WELFARE BENEFIT PLAN**,

Defendant.

Case No. 3:25-cv-01836-SI

**OPINION AND ORDER**

Jeremy L. Bordelon, EVERGREEN DISABILITY LAW, 465 Northeast 181st Avenue, No. 500, Portland, Oregon 97230. Of Attorneys for Plaintiff.

Damon Elder, MORGAN LEWIS & BOCKIUS LLP, 1301 Second Avenue, Suite 3000, Seattle, WA 98101; Dylan Rudolph and Thomas A. Duda, MORGAN LEWIS & BOCKIUS LLP, 1400 Page Mill Road, Palo Alto, CA 94304; and Scott L. Mullins, MULLINS LAW OFFICE LLC, 1000 SW Broadway, Suite 2300, Portland, Oregon 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff is an Oregon resident and an employee at Meta Platforms, Inc. ("Meta"). Meta provides its employees with a health benefit plan ("the Plan"). On June 18, 2025, Meritain Health, the Plan's administrator, denied Plaintiff's pre-determination request for surgical procedures that Plaintiff alleges are covered under the Plan. Plaintiff appealed Meritain Health's decision but received no response. Plaintiff then filed this lawsuit against the Plan, alleging a

violation of 29 U.S.C. § 1132(a)(1)(B) and seeking "[d]amages in [the] form of an approval of benefits requested" and attorney fees and costs. *See* Compl., ECF 1, at 8. Now before the Court is Defendant's Motion to Dismiss, under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 5. Defendant argues that Plaintiff lacks standing to bring this action under Article III of the U.S. Constitution and that Plaintiff has failed to state a claim upon which relief can be granted. For the reasons explained below, the Court denies Defendant's Motion to Dismiss.

## STANDARDS

The Constitution confers limited authority on the federal courts to hear only actual cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338. A plaintiff's standing under Article III of the Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the burden of the party asserting jurisdiction to establish the existence of subject matter jurisdiction. *Id.* at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that,

by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996), *as amended* (Feb. 4, 1997) (quotation marks omitted).

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).[1] In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

[1] An analysis under 12(b)(6) typically relies only on the contents of a complaint. Meta's health benefit plan and Aetna's Clinical Policy Bulletin guidelines ("Aetna Guidelines") are referenced extensively in Plaintiff's Complaint and form the basis of her claims. Accordingly, they are incorporated into the Complaint by reference and may be considered by the Court when deciding a defendant's motion under Rule 12(b)(6). *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("[C]ourts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." (quotation marks omitted)).

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**BACKGROUND**

Plaintiff is a transgender woman who works for Meta and receives healthcare through the Plan.[2] Meritain Health, a subsidiary of Aetna, Inc., is the Plan's administrator. On June 11, 2025, Plaintiff submitted a pre-determination request for clavicle shortening, scapular spine shaving, and rib remodeling procedures through her doctor, Dr. Lief Rogers, to the Plan. ECF 5 at 3-4. That request included a letter from her counselor discussing Plaintiff's need for the procedures,

[2] The substance of the Plan will be discussed in greater detail in the analysis section of this opinion.

documenting her gender dysphoria, and addressing the pre-determination criteria detailed in the Plan. ECF 5 at 9; ECF 1 ¶ 15.

On June 18, 2025, Meritain informed Dr. Rogers that Plaintiff's pre-determination request was denied because the procedures were not covered under the Plan. ECF 5 at 9. Plaintiff alleges that Dr. Rogers informed her of the denial on August 6, 2025, and that she called Meritain the next day to determine the basis for the denial. *Id*. Meritain did not provide her with any information describing the basis of the denial. *Id*. On August 8, Dr. Rogers provided Plaintiff with a copy of the denial letter. *Id*. Plaintiff asserts that the denial letter did not state the specific reasons for the denial or reference the provision of the Plan on which the denial was based. ECF 1 ¶ 20. Also on August 8, Plaintiff called Meritain, and although Meritain informed Plaintiff that she did not have a right to appeal, Dr. Rogers submitted an appeal on her behalf. ECF 5 at 9. Meritain gave conflicting statements to Plaintiff about their deadline to decide on her appeal, and as of October 7 (60 days after the submission of her appeal), Plaintiff still had not received Meritain's determination. ECF 1 ¶¶ 27-35. Alleging that the Plan had failed to follow the procedural requirements of ERISA regulations and that Plaintiff's administrative remedies had been exhausted, Plaintiff filed the pending lawsuit.

**DISCUSSION**

Employers are not required to provide benefit plans, and ERISA affords plan sponsors broad discretion as to what types of benefits to provide to participants. *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *Conkright v. Frommert*, 559 U.S. 506, 516 (2010); *Wit v. United Behav. Health*, 79 F.4th 1068, 1081 (9th Cir. 2023). ERISA, however, was enacted "to ensure that employees would receive the benefits they had earned." *Conkright*, 559 U.S. at 516. An employer's broad discretion in determining the benefits it will provide does not allow an employer to deny benefits promised to participants. *See, e.g.*, *Aetna Health Inc. v.*

*Davila*, 542 U.S. 200, 210 (2004); *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 612 (6th Cir. 2009) (citing *Inter-Modal Rail Emples. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 515 (1997)). "In enacting ERISA, Congress intended primarily to protect . . . plan participants and beneficiaries against the risk that employers might dishonor promises made to employees." *IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*, 2008 WL 11334489, at *4 n.1 (C.D. Cal. May 23, 2008).

Plaintiff filed this lawsuit because, she contends, Defendant has denied her benefits promised to her in the Plan. Defendant argues that Plaintiff's Complaint should be dismissed for two reasons: (1) Plaintiff lacks standing under Article III and Rule 12(b)(1); and (2) Plaintiff fails to state a claim under Rule 12(b)(6). Defendant also asserts that, to the extent Plaintiff claims injury based on procedural mishandling of her request and appeal, there is no private right of action for that claim. The Court, however, does not construe Plaintiff's Complaint to include any such procedural claim. According to Plaintiff, her discussion of Defendant's alleged procedural violations is meant simply to show that Plaintiff has exhausted her administrative remedies and is not meant to assert an independent claim against Defendant.

**A. Whether Plaintiff Has Standing**

In general, to establish standing, a plaintiff must show that: (1) the plaintiff suffered an injury in fact; (2) the injury was caused by the defendant; and (3) the injury can be redressed by the courts. *Thole v. U.S. Bank N.A*, 590 U.S. 538, 540 (2020). In the ERISA context, 29 U.S.C. § 1132(a)(1)(B) offers plan participants a cause of action "to recover benefits due to him under the terms of his plan." Plaintiffs may satisfy standing requirements by adequately stating a claim for denial of benefits under this clause. To state such a claim, "a plaintiff must plausibly allege facts showing he was owed benefits under the plan." *Smith v. Cigna Health & Life Ins. Co.*, 2020 WL 5834786, at *4 (D. Or. Sept. 30, 2020) (citing *Almont Ambulatory Surgery Ctr., LLC v.*

*UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)). "Thus, a 'plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle [her] to benefits.'" *Id.*

Here, the parties agree that the Plan exists and that Plaintiff is a participant in the Plan. Further, both parties agree that Plaintiff was denied the purported benefits that she sought. Thus, Plaintiff's standing turns on whether she plausibly has alleged that she was owed those benefits under the Plan. That question is better analyzed under Rule 12(b)(6), to which the Court turns next.[3]

**B. Whether Plaintiff Has Adequately Stated a Claim**

To state a claim that she was owed benefits under the Plan, Plaintiff must identify a provision of the Plan that would entitle her to those benefits. *Smith*, 2020 WL 5834786, at *4; *see also Ryan S. v. UnitedHealth Group, Inc.*, 98 F.4th 965, 974-75 (9th Cir. 2024) ("A plaintiff bringing a claim based on a violation of plan terms 'must identify a specific plan term that confers the benefit in question.'" (quoting *Steelman v. Prudential Ins. Co. of Am.*, 2007 WL 1080656, at *7 (E.D. Cal. 2007)).

---

[3] Defendant cites two cases in support of the proposition that "Plaintiff's Complaint is properly dismissed under Federal Rule 12(b)(1) because Plaintiff lacks Article III standing." ECF 5 at 10. First, it cites *Arborwell, LLC v. Alerus Fin., N.A.*, 2024 WL 3683337, at *2 (N.D. Cal. July 24, 2024). In that case, however, the court held that a *former* fiduciary of the benefits plan in question no longer had an interest in protecting the rights of other plan participants. Second, Defendant cites *Bagley v. KB Home*, 2008 WL 11340342, at *3 (C.D. Cal. Feb. 22, 2008). In that case, the court held that plaintiffs who had received a full distribution of their plan benefits have not been injured and accordingly lacked standing. Thus, both cases relied on by Defendant are distinguishable. Here, there is no dispute that Plaintiff is a current participant in the Plan who alleges that she is entitled to benefits not yet received.

**1. Applicable Provisions of the Plan**

The "Component Plan" documents include a "Transgender Services" section, which describes a range of relevant expenses that the Plan will cover, stating that that "[c]overed expenses include charges in connection with Medically Necessary Gender Affirmation Treatment," provided that the beneficiary has "obtained pre-determination from the Plan." ECF 6-1 at 44. Plaintiff points to the "reconstructive and complementary procedures" subsection of the Transgender Services section as showing her entitlement to coverage for the procedures that she seeks. ECF 14 at 9. Defendant, however, argues that the Plan does not cover the contested procedures because they are not included in a series of tables at the end of the Transgender Services section and because they are not included in the "Aetna Guidelines." ECF 15 at 11-12.

The Court begins with the plain text of the Plan, reading those terms with "an ordinary and popular sense as would a [person] of average intelligence and experience." *See Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (alteration in original) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990)); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) ("The statutory language [in 29 U.S.C. § 1132(a)(1)(B)] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." (emphasis omitted)).

The "Plan Benefits" section of the Plan includes no specific discussion of what procedures or treatments may or not be covered, referring the reader instead to the Component Plan documents for those details. ECF 6-2 at 15. As noted above, those documents contain a "Transgender Services" section that specifies what gender affirming services the Plan provides. ECF 6-1 at 44. That section includes the following two criteria that the beneficiary must meet for gender affirming services to be covered:

> (1) A marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration as manifested by at least 2 of the following:
>
> > (a) A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristic (or in young adolescents, the anticipated secondary sex characteristic);
> >
> > (b) A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristic);
> >
> > (c) A strong desire for the primary and/or secondary sex characteristic of another gender;
> >
> > (d) A strong desire to be another gender (or any gender different from one's assigned gender);
> >
> > (e) A strong desire to be treated as another gender (or any gender different from one's assigned gender);
> >
> > (f) A strong conviction that one has the typical feelings and reaction of another gender (or some alternative gender different from one's assigned gender).
>
> (2) The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

*Id.* There is no dispute between the parties that Plaintiff meets these two criteria.

The Plan then outlines eight categories of covered expenses, two of which are potentially relevant here. ECF 6-1 at 44. The fourth category is "Reconstructive and complementary procedures for body and face feminization and masculinization." *Id.* The eighth is "Procedures and services listed in the tables at the end of this Transgender Services section." *Id.* Within those tables, the Plan lists 28 specific "Reconstructive and Complementary Procedures" that are covered. *Id*. at 47. None of Plaintiff's requested procedures, however, are listed in those tables.

Thus, if the Plan covers the procedures sought by Plaintiff, that coverage must be found somewhere within category four. *See id*.[4]

Because the Plan lists "Reconstructive and complementary procedures for body and face feminization and masculinization" and "Procedures and services listed in the tables at the end of this Transgender Services section" as separate categories strongly indicates that there are body feminization procedures that the plan covers that are not necessarily included in the tables. The existence of two separate categories must mean something. *See Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278-79 (9th Cir. 1992) (rejecting a contractual interpretation that would have left a portion of the contract meaningless and holding that it "is well settled that a contract should be interpreted so as to give meaning to each of its provisions"). Thus, if category eight includes only those services listed in the tables, category four must include something else; otherwise, category four would be superfluous.

The Plan does not contain much additional text defining what that something else may be. It does not further define "a reconstructive and complementary procedure for body and face feminization or masculinization." Thus, the Court applies the plain meaning of those words in "an ordinary and popular sense as would a [person] of average intelligence and experience." *Richardson*, 112 F.3d at 985 (alteration in original). At later stages of this lawsuit, the parties

[4] The Plan also states that covered expenses "include but are not limited to" those eight categories. ECF 6-1 at 44. This implies that the Plan covers more than just the "Procedures and services listed in the tables." *Id.* Thus, non-inclusion in the tables, by itself, does not render a service uncovered, as Defendant argues. *See In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (collecting cases for the proposition that the use of non-limiting language like the word "include" preceding a list of terms indicates an intention that the list be treated as non-exhaustive). Such non-limiting language, however, does not automatically mean that the Plan covers any procedure that a participant may seek. Here, Plaintiff's primary argument is not that the "not limited" text creates such coverage. Instead, Plaintiff relies on the fourth category of expressly covered expenses within the "Transgender Services" section of the Plan.

may present additional evidence that defines these terms or more information concerning the nature of the procedures at issue. Applying the *Richardson* standard, however, it is difficult at that stage to see how clavicle shortening, scapular spine shaving, and rib remodeling are not "reconstructive procedures intended to feminize the body." Thus, the plain text of the Plan appears to cover Plaintiff's requested procedures, and Plaintiff would be entitled to prevail, at least if all other Plan requirements are met.

**2. Pre-Determination Requirement**

The Plan states that reconstructive and complementary procedures for body and face feminization and masculinization are covered, "as long as you or a covered Dependent have obtained pre-determination from the Plan." ECF 6-1 at 44. On the next page, the Plan describes the procedures for obtaining pre-determination for those reconstructive and complementary procedures, as well as for breast/chest surgery and genital surgery.

For reconstructive and complementary procedures, pre-determination requires a letter from a qualified health professional that documents the following:

> (1) Persistent, well-documented gender dysphoria; and
>
> (2) Capacity to make a fully-informed decision and consent to treatment; and
>
> (3) If significant medical or mental health concerns are present, they must be reasonably well-controlled, and
>
> (4) Surgical services require precertification (when performed on an Inpatient basis).

*Id*. at 45. Here, Plaintiff submitted just such a letter from a qualified health professional, and there is no dispute that she has met these criteria. Thus, the pre-determination requirement has been satisfied. Although Defendant argue that the Aetna Guidelines inform the Court's analysis of what reconstructive and complementary procedures are covered, the section on

pre-determination requirements for those procedures does not mention the Aetna Guidelines. This omission calls into question whether the Aetna Guidelines even apply to reconstructive and complementary procedures. *See id*.

The Court construes the Plan's references to "Breast/Chest and Genital Surgical Procedures" to be addressing the "Core Surgeries" covered under category three in the "Transgender Services" section of the Plan. ECF 6-1 at 44-45. As this time, and based on the Plan documents submitted, the Court does not understand these surgeries to include any of the procedures that are at issue in this case. The Court, however, acknowledges the physical proximity of the clavicle and the ribs to the chest/breast and notes that this leaves open the possibility that the procedures request by Plaintiff may be subject to the pre-determination requirements for breast/chest surgery.

The text of the Plan details one pre-determination requirement for breast/chest surgery: that the participant be diagnosed with gender dysphoria. *Id*. at 45. The Plan then points to the Aetna Guidelines for a "full description of the criteria" for the diagnosis of gender dysphoria. *Id*. The Aetna Guidelines do not make a distinction between covered and uncovered procedures. Rather, they distinguish between procedures that are medically necessary and those that are not. ECF 6-3 at 2-7. Neither clavicle shortening nor rib remodeling is listed in the Aetna Guidelines as medically necessary *or* not medically necessary. *Id*. Indeed, nearly every procedure mentioned on either list deals with the genitals or reproductive organs; breast removal or augmentation; or hair, facial, or tracheal procedures. *Id*. There appears to be only one exception—body contouring (including but not limited to liposuction and similar procedures) is classified as not medically necessary. *Id*. at 6. If the Court were to analogize clavicle shortening and rib remodeling to any of the procedures mentioned in the Aetna Guidelines, they likely come closest to these body

contouring procedures, simply because they deal with the general appearance of the body and not the appearance of the face or the presence of reproductive organs. Nevertheless, there are differences between the skeletal changes inherent in the described procedures and body contouring, such that it would be inappropriate to dismiss Plaintiff's lawsuit based on that analogy.

The Aetna Guidelines also explicitly state that they are non-exclusive and that participants should defer to the terms of their specific plan, including the admonition that "[s]ome plans may cover gender affirming procedures in addition to the following documents. Please check the specific benefit plan documents" *Id.* at 2. In other words, the Aetna Guidelines on which Defendant urges the Court to rely point the Court back to the Plan and its components. As already discussed, those documents appear, at least facially, to cover the procedures that Plaintiff seeks.

Finally, Defendant argues that the Plan excludes coverage of Plaintiff's requested procedures. There is, however, ambiguity in those documents, and many material questions must be answered to determine whether the requested procedures are covered or excluded. These questions include:

- What is the definition of a "reconstructive and complementary procedure for body and face feminization and masculinization"?
- Are clavicle shortening, scapular spine shaving, or rib remodeling "reconstructive and complementary procedures for body feminization"?
- Do the Aetna Guidelines even apply to "reconstructive and complementary procedures"?
- Is clavicle shortening or rib remodeling "breast/chest surgery"?

- Do the Aetna Guidelines provide relevant guidance regarding the procedures requested by Plaintiff?

Viewing the facts in the light most favorable to Plaintiff and giving Plaintiff the benefit of all reasonable inferences, the Court concludes that Plaintiff has stated a claim. Plaintiff sufficiently alleges that the Plan's provision that covers "reconstructive and complementary procedures for body feminization" includes coverage of clavicle shortening, scapular spine shaving, and rib remodeling.[5] Thus, Plaintiff has alleged an injury in fact sufficient to show constitutional standing.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss, ECF 5.

**IT IS SO ORDERED**.

DATED this 25th day of February, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

[5] Throughout Defendant's Motion to Dismiss, ECF 5, and Reply, ECF 15, Defendant cites cases in support of the argument that Plaintiff has not identified a provision of the Plan that covers the contested procedures, including this Court's decision in *Smith*, 2020 WL 5834786, as well as *Harris v. Garber*, 2024 WL 3202435, at *2 (D. Nev. June 27, 2024), and *Simi Surgical Ctr., Inc. v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6332285, at *2-3 (C.D. Cal. Jan. 4, 2018). These cases, in fact, stand for the proposition that, to maintain an ERISA action, a plaintiff must identify a specific plan provision that conceivably confers the benefit sought. The plaintiffs in those cases, however, did not cite a specific provision of the plan at issue. Here, Plaintiff has identified a provision that allegedly covers the requested procedures.